IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KEVIN B. WARDEN, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-488-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

BRUCE W. BREWER
419 Fifth Street
Oregon City, OR 97045

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

THOMAS M. ELSBERRY
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

MOSMAN, District Judge:

    Plaintiff Kevin Warden seeks judicial review of the Social Security Commissioner's final

decision denying his application for Disability Insurance Benefits (DIB) under Title II of the

1 - OPINION AND ORDER

Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is affirmed.

## BACKGROUND

Born in 1950, Mr. Warden completed high school and in 1996 completed two years of college education. Tr. 57, 71.[1] Between 1984 and 2001 he worked as a journeyman machinist and computer assisted design ("CAD") drafter. Tr. 66.

Mr. Warden initially alleged disability since October 10, 2001 due to "lay off" and a crushed spinal disk "no longer there." Tr. 65. The record shows that Mr. Warden's disability claim is based upon back pain following a lumbar fusion operation. Tr. 21-22. After Mr. Warden's hearing before an Administrative Law Judge ("ALJ"), the ALJ found Mr. Warden "generally credible to the extent the claimant does have a medically determinable impairment which does cause vocationally relevant limitations, but not to the extent he is completely disabled by them." Tr. 17. The ALJ also found that Mr. Warden could return to his past relevant work. Tr. 18. Mr. Warden seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Mr. Warden challenges the ALJ's evaluation of the evidence and his conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on May 17, 2005 (Docket #8).

2 - OPINION AND ORDER

If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(f).

## THE ALJ'S FINDINGS

The ALJ found Mr. Warden "generally credible" regarding the existence of his impairment, but did not find Mr. Warden credible regarding the extent of his alleged impairment. Tr. 17. The ALJ based this finding upon Mr. Warden's reported activities and inconsistencies in Mr. Warden's testimony regarding his job termination. Tr. 18.

The ALJ found Mr. Warden's ability to work moderately limited by his back impairment. Tr. 16, 18. He evaluated Mr. Warden's RFC:

> [T]he claimant retains the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. He can stand and/or walk for two hours in an eight-hour workday and can sit for six hours in an eight-hour workday. He can frequently climb, balance, kneel, crouch or crawl and can occasionally stoop.

Tr. 25.

At step four, the ALJ found that Mr. Warden's RFC did not preclude him from performing his past relevant work as a CAD drafter. Tr. 19. The ALJ solicited testimony from a vocational expert ("VE") who confirmed Mr. Warden could return to this work. Tr. 327. Accordingly, the ALJ determined Mr. Warden was not disabled under the Act at any time through the date of his decision. Tr. 19-20.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts [] from the ALJ's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) *citing Martinez v.*

*Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the reviewing court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This court also looks for "clear and convincing reasons" in reviewing rejection of physician testimony. *Magallanes*, 881 F.2d 751. Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id*. at 750; *see* also *Batson*, 359 F.3d at 1193.

## DISCUSSION

Mr. Warden contends the ALJ failed to accurately assess his RFC because the ALJ improperly discredited Mr. Warden's testimony, improperly considered a treating physician's opinion, and improperly dismissed a reviewing physician's opinion. Mr. Warden also claims the ALJ improperly addressed lay witness testimony.

### 1.     Mr. Warden's Credibility

The ALJ's reasoning for suspecting Mr. Warden's credibility is primarily based upon Mr. Warden's reported physical activities. Tr. 17. The ALJ also considered the possibility of secondary gain, noting that Mr. Warden stated in his hearing he was relieved not to be working. Tr. 18, 127, 308.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider

objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

The ALJ first based his credibility finding upon daily activities Mr. Warden reported in his application and in testimony at his hearing. Tr. 18. Mr. Warden's primary hobby is karate. Mr. Warden testified that after his surgery his role in karate practice is restricted to demonstrating and instructing. Tr. 298. Though physician-prescribed exercise need not be construed as substantial gainful activity, activities inconsistent with alleged limitations may be cited as evidence the claimant may engage in substantial gainful activity. *Orteza*, 50 F.3d at 750.

The ALJ next cited Mr. Warden's hobby of building Native American drums. Tr. 18. Mr. Warden testified he builds drums for trade, though not for sale. Tr. 304. The ALJ specifically noted that in building these drums, Mr. Warden reported stretching buffalo hides on a fourteen foot trampoline. Tr. 18. Though a claimant is not required to "vegetate in a dark room," substantial daily activity may be construed as similar to gainful employment. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (citation omitted); *Orteza*, 50 F.3d at 750. This reasoning also applies to the ALJ's observation that Mr. Warden cared for his grandchildren, though he was unable to lift them. Tr. 18; *Orteza*, 50 F.3d at 750.

The ALJ further noted that Mr. Warden testified that he ceased working in October 2001 due to post-September 11, 2001 layoffs in the airport construction industry. Tr. 18, 288-89. This

corresponds with Mr. Warden's statement that he stopped work due to "lay offs" in his initial application. Tr. 65. Mr. Warden's counsel later suggested that this date simply coincided with his back injury. Pl.'s Brief at 12. While both circumstances may be true, the file history and Mr. Warden's testimony support the ALJ's inference. The medical record does not show disabling back pain prior to October 2001; instead it shows that Mr. Warden declined back surgery during this period. Tr. 205. This court will not overturn inferences reasonably drawn. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Batson*, 359 F.3d at 1193.

## 2.     Medical Source Statements

Mr. Warden contends the ALJ improperly evaluated the opinions of treating physician Dr. Treible and reviewing physician Dr. Gritzka. Each is addressed in turn.

### a.     Treating Physician Dr. Treible

Dr. Treible first saw Mr. Warden in September 2000 in consultation for back pain. Tr. 205. Imaging studies revealed degenerative disk disease; Dr. Treible recommended surgery, which Mr. Warden declined. Tr. 205. In September 2001, imaging studies were repeated and Dr. Treible anticipated surgery. Tr. 166, 169. On December 3, 2001, Dr. Treible performed a lumbar fusion operation. Tr. 160-62. Notes show that Mr. Warden's bone graft and surgical incision healed appropriately. Tr. 172. Between January and March 2002, imaging studies showed a consolidating bone graft and stable spinal alignment. Tr. 170, 209, 210. In March 2002, Dr. Treible's notes show that Mr. Warden was "feeling great" with no particular complaints. Supp. Tr. 171.[2] Though a May 2002 study noted the graft was "not particularly well

---

[2] Citations "Supp. Tr." refers to the Supplemental Transcript filed by the Commissioner on June 6, 2005 (Docket #9).

7 - OPINION AND ORDER

formed," the report did not indicate malformity.  Tr. 209.

Contrary to Mr. Warden's suggestion, in February 2003, Dr. Treible countersigned a physician assistant's notation that Mr. Warden was "doing fairly well;" a concurrent imaging study showed solid bone formation with no loosening hardware.  Tr. 207-208.  It is reasonable to conclude Dr. Treible accepted authorship of a report he signed.  Mr. Warden's submission that the physician assistant's signature discredits the report fails.

Mr. Warden claims Dr. Treible's notes support a disability finding.  Dr. Treible's notes show restriction in bending, twisting, and lifting following surgery.  Tr. 172.  Dr. Treible also explicitly restricted Mr. Warden from participating in karate.  Tr. 172.   In March 2003, Dr. Treible wrote, "It is reasonable that Kevin may have a reduction in low back discomfort by intermittently lying down from time to time."  Tr. 274.  Dr. Treible did not explicitly endorse any specific finding of disability or additional restrictions.  Contrary to Mr. Warden's submission, Dr. Treible did not restrict Mr. Warden from sitting, or state that Mr. Warden would be expected to miss more than two days of work per week.  Tr. 170, 172, 274, Supp. Tr. 171.

Notably, the "floating fusion" Mr. Warden cites is a term, or procedure, of art.[3]  The record does not suggest the term presumptively indicates an associated inability to heal.  Tr. 254.  Mr. Warden's counsel misconstrues the procedure as a pathological feature.  (Plaintiff's Opening Brief, 17, Plaintiff's Reply Brief, 6).  The medical evidence does not support Mr. Warden's submission of complications following surgery.

---

[3]*See* R.C. Quinnell and H.R. Stockdale, *Some experimental observations of the influence of a single lumbar floating fusion on the remaining lumbar spine*, 6(3) Spine, 263 - 7, (1981).

### b. Reviewing Physician Dr. Gritzka

Mr. Warden submits that the ALJ improperly noted the source of Dr. Gritka's opinion, failed to give greater weight to a specialist opinion, and failed to find Dr. Grtizka corroborated Dr. Treible's alleged disability opinion.

In April 2003, Dr. Gritzka completed a short form provided by Mr. Warden's counsel. Tr. 254 - 255. Dr. Gritzka indicated that he reviewed Mr. Warden's imaging studies and X-rays. Tr. 254. He did not indicate reviewing Dr. Treible's clinical notes, or other aspects of Mr. Warden's medical record. *Id.* Dr. Gritzka affirmed a statement asking if Mr. Warden might be unable to predictably sustain full time sedentary work. *Id*.

In support of this affirmation, Dr. Gritzka wrote, "[Mr. Warden's] symptoms correlate with known and fairly common complications of a "floating" L2-L3 fusion." *Id.* Dr. Gritzka also described Mr. Warden's symptoms, though, as noted, he did not indicate examining Mr. Warden or reviewing clinical symptom complaints. *Id.* Dr. Gritzka then suggested Mr. Warden's karate exercises are similar to "Tai-Chi, a therapeutic exercise," and said they did not reflect upon Mr. Warden's ability to sustain activity. Tr. 255. He then found Mr. Warden's alleged inability "medically reasonable." *Id.* Dr. Gritzka supported this statement by reiterating his review of Mr. Warden's x-rays, saying, "It is not uncommon for individuals who have had fusions such as Mr. Warden to have significant residual dysfunction and pain." Tr. 255. It is not clear how Dr. Gritzka learned of Mr. Warden's symptom complaints or karate exercises, as Dr. Gritzka based his review upon x-rays alone.

The ALJ noted that Mr. Warden's attorney compensated Dr. Gritzka for his review of the

9 - OPINION AND ORDER

record. Tr. 18. This is not a sufficient reason for dismissing a physician. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).

Generally, a treating physician is accorded greater weight than an examining or reviewing physician. *Edlund*, 253 F.3d at 1157. Though a specialist is often accorded greater weight than a non-specialist, Social Security regulations do not suggest a reviewing specialist displaces the treating physician's rule. 20 C.F.R. §§ 404.1527(d).

Dr. Gritzka offers no conclusion establishing disability specific to Mr. Warden. Dr. Gritzka agrees it may be reasonable that an individual with Mr. Warden's history would have difficulty sitting for long periods. Tr. 255. This opinion is not supported by clinical findings or clinical observations; Dr. Gritzka simply noted that floating fusions are prone to complication. Tr. 254. Dr. Gritzka does not cite any evidence in Mr. Warden's records indicating that Mr. Warden actually experienced surgical complications. Tr. 255.

Contrary to Mr. Warden's submission, Dr. Gritzka does not corroborate a disability finding by Dr. Treible, as Dr. Treible made no such finding. Dr. Gritzka does not contradict Dr. Treible's records, but neither does he contribute observations or findings that are specific to Mr. Warden. For these reasons, the ALJ was justified in rejecting Dr. Grizka's testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002)).

### 3. Lay Witness Testimony

Mr. Warden submits that lay testimony submitted by his friend and karate instructor, Dan Anderson, supports his disability claim. The ALJ has a duty to consider lay witness testimony.

20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Id*. at 919. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

Lay witness testimony alone never establishes disability. *Id*. Here, Mr. Anderson submitted a brief letter to the record stating that Mr. Warden was limited in performing his karate practice. Tr. 131. This observation is consistent with medical evidence restricting Mr. Warden from participating in karate practice, but does not establish disability.

In finding Mr. Anderson "generally credible to the extent he is simply reporting his observations," the ALJ appropriately weighed Mr. Anderson's testimony. Tr. 18, *Dodrill*, 12 F.3d at 918. Noting that Mr. Anderson and Mr. Warden are "good friends" is not an acceptable reason to discredit lay witness testimony. *Id*. Here, the ALJ did not entirely reject Mr. Anderson's testimony, as Mr. Warden submits, and that testimony does not establish disability.

### 4. The ALJ's Step Four Finding

Mr. Warden suggests the ALJ erred in finding he could return to his past relevant work as a CAD drafter. In considering whether Mr. Warden could return to this work, the ALJ solicited

11 - OPINION AND ORDER

testimony from a VE. Tr. 325 - 328. In formatting his hypothetical questions to the VE, the ALJ included limitations supported by the medical evidence. Tr. 327. In making his findings based upon VE testimony, the ALJ did not include additional limitations suggested by Mr. Warden's counsel, such as a strict sit/stand option, medically required recumbency, or more than two absences per month. Tr. 19, 327. The VE stated that a hypothetical individual with Warden's medically supported RFC could return to his past relevant work as a CAD drafter. Tr. 327.

The ALJ is not required to include unsupported limitations in his hypothetical questions to a VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). For the reasons established above, Mr. Warden failed to show substantive error in the RFC assessment. The ALJ appropriately relied upon this RFC and the VE's testimony in his step four finding. *Id*. Mr. Warden fails to show error in the ALJ's step four conclusion.

## CONCLUSION

The Commissioner's decision that Mr. Warden did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this   14th   day of July, 2006.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge